# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Renee Campbell, c/o Kline & Specter, P.C., 1525 Locust St., 12th FL
Phila., PA 19102

## DEFENDANTS

Sensio Inc., d/b/a Made by Gather, 261 Madison Ave., 25th FL
New York, New York 10016

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* Benjamin O. Present, Esq.

Kline & Specter, P.C., 1525 Locust St., 12th FL, Phila., PA 19102
(215) 772-1000 and George E. McLaughlin, Esq., 1890 Gaylord St., Denver Co 80206

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[x] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV |
| **REAL PROPERTY** | | **LABOR** | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| | | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
The lid of a pressure cooker opened while under pressure causing scalding hot contents to erupt and resulted in severe injuires to Plaintiff.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ To be determined

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
3/26/26

SIGNATURE OF ATTORNEY OF RECORD
/s/Benjamin O. Present

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.

**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Philadelphia, Pennsylvania

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☒ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RENEE CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| SENSIO INC., | ) | |
| d/b/a MADE BY GATHER, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Renee Campbell, by and through her attorneys, as and for her Complaint against

Defendant Sensio Inc., respectfully alleges as follows:

**NATURE OF THE CASE**

1.      This is a Complaint for damages arising from injuries sustained by Plaintiff Renee

Campbell due to a defective Bella brand electric pressure cooker product that was manufactured,

marketed, and sold by Defendant Sensio.

2.      Defendant Sensio does business as Made By Gather.

3.      On or about March 29, 2024, in Philadelphia, Pennsylvania, Plaintiff Renee

Campbell was using a Bella 6-Quart Electric Pressure Cooker, Model No. M-60B23G, when the

lid of the pressure cooker opened while the product was under pressure, causing the scalding hot

contents to erupt from the pot.

4.      Plaintiff sustained severe burns to her abdomen, causing extreme pain, suffering,

and permanent disfigurement.

5.     Plaintiff seeks compensatory damages for under theories of strict products liability, failure to warn, negligence, breach of warranty, and violations of Pennsylvania consumer protection laws.

6.     Plaintiff further alleges that Defendant Sensio Inc. knew or should have known of the product's defects and failed to take appropriate action to protect consumers, thereby demonstrating a willful and reckless disregard for consumer safety.

## PARTIES

7.     Plaintiff Renee Campbell is a citizen of the state of Pennsylvania, residing and domiciled in Philadelphia, Pennsylvania.

8.     Defendant Sensio Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 261 Madison Avenue, 25th Floor, New York, New York 10016.

9.     Defendant Sensio Inc. does business in the state of Pennsylvania and is engaged in the design, manufacture, distribution, and sale of consumer products, including the Bella 6-Quart Electric Pressure Cooker, Model No. M-60B23G, which is the product at issue in this case.

10.     Defendant Sensio Inc. conducts substantial business in the state of Pennsylvania, including marketing, distributing, and selling its products to Pennsylvania residents, and is subject to the jurisdiction of this Court.

11.     Defendant Sensio Inc. conducts business in the state of Pennsylvania in part by entering in agreements with various retailers, including JCPenney, Kohl's, Lowe's, Macy's and Target stores nationwide, and online at Amazon.com and other websites, knowing that those retailers and selling platforms will sell Sensio products to consumers in the state of Pennsylvania.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, specifically in Philadelphia, Pennsylvania, where the incident involving the Bella 6-Quart Electric Pressure Cooker occurred.

**FACTUAL ALLEGATIONS**

14.    The product at issue is the Bella 6-Quart Electric Pressure Cooker, Model No. M-60B23G, which was designed, manufactured, imported, marketed, distributed, and sold by Defendant Sensio Inc.

15.    The Bella 6-Quart Electric Pressure Cooker is marketed as a safe and reliable kitchen appliance intended for use in cooking food under pressure.  The product is advertised as incorporating safety features, including an "auto-locking lid" that purportedly prevents the lid from opening while the cooker is pressurized.

16.    The product is intended for consumer use in a domestic setting and is represented as being safe when used in accordance with the manufacturer's instructions.

17.    On or about March 29, 2024, Plaintiff Renee Campbell was using the Bella 6-Quart Electric Pressure Cooker at her residence in Philadelphia, Pennsylvania.

18.    While the pressure cooker was in normal and foreseeable use, the lid of the cooker unexpectedly opened while its contents were still under pressure.  This malfunction caused scalding hot contents and steam to erupt from the product.

19.     As a direct result of this incident, Plaintiff sustained severe burns to her abdomen, causing extreme pain and suffering, and permanent scarring and disfigurement.

20.     The Bella 6-Quart Electric Pressure Cooker was defectively designed and/or manufactured, creating an unreasonable risk of harm to consumers. Specifically, the product's lid was capable of spontaneously detaching while the product is pressurized, allowing the sudden and dangerous release of its super-heated and scalding contents.

21.     The product failed to meet applicable safety standards, including but not limited to UL 136 Standard for Safety, Pressure Cookers, approved by ANSI as ANSI/UL 136-2010. The product lacked adequate safety mechanisms to prevent the lid from opening under pressure.

22.     Defendant Sensio Inc. failed to include adequate warnings or instructions regarding the risks associated with the product. The product's marketing materials and user manual did not sufficiently warn consumers of the potential for the lid to open prematurely or the associated risks of severe burns.

23.     Defendant Sensio Inc. knew or should have known of the defects in the Bella 6-Quart Electric Pressure Cooker and the risks posed to consumers. Prior to the incident involving Plaintiff, Defendant was aware of similar incidents in which the product's lid opened under pressure, causing injuries.

24.     Despite this knowledge, Defendant failed to take reasonable steps to remedy the defects or to warn consumers of the risks. Defendant continued to market and sell the product without implementing necessary design changes or issuing adequate warnings.

25.     Defendant acted with reckless disregard for the safety of consumers by knowingly placing a defective and unreasonably dangerous product into the stream of commerce.

## SENSIO INC.

26.    Sensio Inc. is a closely held family corporation and has no parent, subsidiary, or affiliate that has issued shares or debt securities to the public.

27.    Sensio Inc. was founded in 2003 by Shae Hong, the current CEO, and her then-business partner, Dany Lavy.

28.    Led by the Company's Chief Executive Officer ("CEO") and now majority owner Shae Hong ("Hong"), from its founding in 2003 through the present, Sensio has emerged as a major designer, distributor, and manufacturer of small kitchen appliances sold in major retailers.

29.    Sensio's business consists primarily of the development, manufacture, distribution, sale, and promotion of branded and non-branded small kitchen appliances in retail and commercial distribution channels, with other products such as home products, cookware, table-top kitchen appliances, cutlery and cutting boards, diffusers, oils, air purifiers and sound machines, as emerging businesses for the Company.

30.    Sensio distributes its products under various brand names, including certain private labels, including "Bella®", and primarily sells its products through various outlets, including well-known retailers, department stores, big box stores and online.

31.    In 2011 Sensio launched the Bella® brand name of consumer products, which now includes a line of electric pressure cookers, including the Bella® 6-Quart Electric Pressure Cooker.

32.    Sensio Inc. does business under the registered Trademark, "Made By Gather™".

33.    Defendant Sensio, Inc., d/b/a Made by Gather™, has over 100 employees across New York City, Montreal, Hong Kong, and China.

## STANDARDS FOR PRESSURE COOKER SAFETY

5

34.    UL [f/k/a Underwriters Laboratories] is an industry supported business, that among other things, provides testing and engineering services to manufacturers.  Its testing and certification services assist its customers to meet regulatory requirements and consumer demand for safe, trustworthy products.

35.    Most retailers in the United States require that electrical appliance products they sell be UL Certified or have the equivalent of a UL Certification.

36.    The applicable industry standard for safety of pressure cookers is found in UL 136 Standard for Safety, Pressure Cookers.

37.    The American National Standards Institute [ANSI] oversees standards and conformity assessment activities in the United States.

38.    ANSI's mission is to enhance both the global competitiveness of U.S. business and the U.S. quality of life by promoting and facilitating voluntary consensus standards and conformity assessment systems and safeguarding their integrity.

39.    ANSI has approved UL 136 Standard for Safety, Pressure Cookers as ANSI/UL 136-2010.

40.    UL 136 Standard for Safety, Pressure Cookers, provides, in part:

> 4.3   The cover shall be constructed to comply with one of the following:
>
> a) When the cover is opened the maximum normal operating pressure shall be released before the fastening means is fully disengaged;
>
> b) The cover shall be removable only after the pressure within the cooker is zero (0) psig; or
>
> c) The opening of the cover when the cooker is under pressure shall not result in hazardous displacement of the cover or the displacement of steam or water.

41.    UL 136 Standard for Safety, Pressure Cookers, also provides, in part:

6

9.1    An ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons.  The propelling of a loosened cover and the escape of steam or hot water are examples of this risk.

42.    Industry standards for safety of pressure cookers require that the subject Bella® 6-Quart Electric Pressure Cooker comply with ANSI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

43.    The Bella® 6-Quart Electric Pressure Cooker was not certified to comply with UL 136 Standard for Safety, Pressure Cookers.

44.    Defendant Sensio did not require that its Bella® 6-Quart Electric Pressure Cooker comply with UL 136 Standard for Safety, Pressure Cookers.

45.    Defendant Sensio did not submit its Bella® 6-Quart Electric Pressure Cooker to Underwriters Laboratories for certification pursuant to UL 136 Standard for Safety, Pressure Cookers.

46.    Prior to the sale of the subject Bella® 6-Quart Electric Pressure Cooker Defendant Sensio knew or should have known that its Bella® 6-Quart Electric Pressure Cookers did not comply with ANSI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

### SUBJECT BELLA® 6-QUART ELECTRIC PRESSURE COOKER

47.    The Bella® 6-Quart Electric Pressure Cooker, that is the subject of this civil action is a Model No. M-60B23G, Item No: 14467, with a date code of 1850.  [See Images 1 and 2.]

7




|                  |                  |
|------------------|------------------|
| Image 1          | Image 2          |

48.    Defendant Sensio designed the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action.

49.    Defendant Sensio manufactured the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action, or had it manufactured for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

50.    Defendant Sensio imported the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action.

51.    Defendant Sensio marketed the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action.

52.    Defendant Sensio distributed the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action.

53.    Defendant Sensio had the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action, labeled with the brand name "Bella®", a name that is a registered trademark of Sensio.

54.    Defendant Sensio distributed the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action, or had it distributed for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

8

55. Defendant Sensio sold the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action, or had it sold for it under a contract or supply agreement with a third party that had no role in the design or manufacture of the product.

56. Defendant Sensio was a nonmanufacturing entity in the chain of distribution of the Bella® 6-Quart Electric Pressure Cooker involved in the incident that is the subject of this civil action.

57. Prior to the sale of the subject Bella® 6-Quart Electric Pressure Cooker Defendant Sensio knew that the lid of the Bella® 6-Quart Electric Pressure Cooker could be opened while the cooker's contents were under pressure.

58. The subject Bella® 6-Quart Electric Pressure Cooker did not comply with the requirements of UL 136 Standard for Safety, Pressure Cookers.

59. Prior to the sale of the subject Bella® 6-Quart Electric Pressure Cooker Defendant Sensio knew or should have known that its Bella® 6-Quart Electric Pressure Cookers did not comply with UL 136 Standard for Safety, Pressure Cookers.

60. Prior to the sale of the subject Bella® 6-Quart Electric Pressure Cooker Defendant Sensio knew that the lid of the Bella® pressure cooker did not comply with industry standards for the safety of pressure cookers.

61. Prior to the sale of the subject Bella® 6-Quart Electric Pressure Cooker Defendant Sensio knew that users of this product had been seriously injured by the lid of the Bella® pressure cooker opening while the cooker's contents were under pressure.

62. Prior to the sale of the subject Bella® 6-Quart Electric Pressure Cooker Defendant Sensio did not stop the distribution or sale of the Bella® pressure cooker.

9

63.     Prior to March 29, 2024, Defendant Sensio knew that the lid of the Bella® 6-Quart Electric Pressure Cooker did not comply with the requirements of UL 136 and did not pass this information on to consumers.

64.     Prior to March 29, 2024, Defendant Sensio knew that the lid of the Bella® 6-Quart Electric Pressure Cooker did not comply with industry standards for the safety of pressure cookers and did not pass this information on to consumers.

65.     Prior to March 29, 2024, Defendant Sensio knew that the lid of the Bella® 6-Quart Electric Pressure Cookers could open while the cooker's contents were under pressure and did not pass this information on to consumers.

66.     Prior to March 29, 2024, Defendant Sensio did not recall the Bella® 6-Quart Electric Pressure Cooker because it knew that the lid may open while the cooker's contents were under pressure.

67.     Prior to the manufacture of the Bella® 6-Quart Electric Pressure Cooker, safer alternative designs for the lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Sensio's competitors.

68.     Prior to the manufacture of the Sensio Pressure Cookers, safer alternative designs for the lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Sensio's competitors.

69.     Prior to the manufacture of the Bella® 6-Quart Electric Pressure Cooker, Sensio chose not to incorporate into the design and manufacture of its Bella® 6-Quart Electric Pressure Cooker available safer alternative designs for the lid locking system and safety features.

10

70.    Prior to the manufacture of the Sensio Pressure Cookers, Sensio chose not to incorporate into the design and manufacture of its Bella® 6-Quart Electric Pressure Cooker available safer alternative designs for the lid locking system and safety features.

71.    Upon information and belief, at all relevant times, Sensio represented or caused the following representations to be made about Sensio Pressure Cookers:

a.   The pressure cookers feature a "[s]afety locking lid [that] unlocks only once pressure is released."[1]

b.   "The lid automatically locks in place and only opens when pressure is released using the valve" and the "[a]uto-locking lid opens only when the pressure is released."[2]

c.   "Safe operation is achieved via the auto-locking lid, pressure release system and safety valve of this stainless BELLA Pro multicooker."[3]

d.   The "[p]ressure release valve, floating valve and auto-locking lid make the multi-cooker safe to use," and the cooker includes a "Safety Locking Lid."[4]

e.   The "[a]uto-locking lid opens only when the pressure is released," and the cooker includes other "safety features."[5]    (Collectively, the "Misrepresentations".)

---

[1]  https://bellahousewares.com/products-bella/6qt-pressure-cooker-touch-pad/
(November 2, 2020).

[2]  https://www.walmart.com/ip/Bella-8-Qt-Pressure-Cooker/698642502
(February 3, 2022).

[3]  https://www.bestbuy.com/site/bella-pro-series-8-qt-digital-multi-cooker-stainless-
steel/6261444.p?skuId=6261444 (February 3, 2022).

[4]  https://www.lowes.com/pd/BELLA-8-Quart-Programmable-Electric-Pressure-
Cooker/1000604247 (February 3, 2022).

[5]  https://www.bjs.com/product/bella-8-qt-pressure-cooker/3000000000000583086
(February 3, 2022).

11

72.     Defendant boasts that its pressure cookers feature an "[e]xtremely safe and secure locking system"[6] or "safety valve" which creates "added safety and control" and allows the consumer to "cook a variety of foods."[7]  Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects.  Said defects cause significant risk of bodily harm and injury to its consumers.

73.     Specifically, said defects manifest themselves when, despite Defendant's statements, the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders.  Plaintiff was able to remove the lid while the pressure cooker retained pressure, causing Plaintiff serious and substantial bodily injuries and damages.

74.     Prior to the manufacture of the subject Bella® 6-Quart Electric Pressure Cooker safer alternative designs for the lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Sensio's competitors.

75.     Prior to the manufacture of the subject Bella® 6-Quart Electric Pressure Cooker Sensio chose not to incorporate into the design and manufacture of its Bella® 6-Quart Electric Pressure Cooker available safer alternative designs for the lid locking system and safety features.

76.     By 2018, Sensio was receiving notice from users of the defect and continued to receive notice that the lid of the Products were opening while their contents were under pressure,

_____

[6] *See* https://bellahousewares.com/products-bella/5qt-pressure-cooker/
[7] Id.

12

the super-heated contents of the Product erupted from the pot, and caused serious burn injuries to the user of the Product.

77.    On August 10, 2023, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 860,000 of Defendant's pressure cookers, which includes the subject pressure cooker, after receiving "63 reports of incidents, including 61 burn injuries, some of which involved second and third degree burns to the face, abdomen, arms, and hands."[8]

78.    Defendant knew or should have known of these defects but nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

79.    Defendant ignored and/or concealed its knowledge of these defects in its pressure cookers from Plaintiff, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and others like her.

80.    As a direct and proximate result of Defendant's conduct, Plaintiff incurred significant and painful bodily injuries, physical pain, mental anguish, and diminished enjoyment of life.

### MARCH 29, 2024 INCIDENT

81.    On March 29, 2024, Plaintiff Renee Campbell was using the subject Bella® 6-Quart Electric Pressure Cooker as intended in a foreseeable manner.

---

[8]  See https://www.cpsc.gov/Recalls/2023/Sensio-Recalls-Bella-Bella-Pro-Series-Cooks-and-Crux-Electric-and-Stovetop-Pressure-Cookers-Due-to-Burn-Hazard

82. On March 29, 2024, Plaintiff Renee Campbell was using the subject Bella® 6-Quart Electric Pressure Cooker, when the lid of the Bella® pressure cooker opened while the cooker's contents were under pressure.

83. On March 29, 2024, Plaintiff Renee Campbell was using the subject Bella® 6-Quart Electric Pressure Cooker, for the purpose and in the manner normally intended.

84. On March 29, 2024, Plaintiff Renee Campbell was using the subject Bella® 6-Quart Electric Pressure Cooker, when the lid opened while the product was pressurized.

85. On March 29, 2024, when Plaintiff Renee Campbell was using the subject Bella® 6-Quart Electric Pressure Cooker, the cover was removable before the pressure within the cooker was zero (0) psig, or otherwise low enough that the scalding contents would not erupt from the pot as the lid opened.

86. On March 29, 2024, Plaintiff Renee Campbell was using the subject Bella® 6-Quart Electric Pressure Cooker, when the opening of the lid resulted in eruption of the scalding contents of the pot.

87. On March 29, 2024, an ordinary user of the subject Bella® 6-Quart Electric Pressure Cooker was capable of manually defeating the holding action of the clamping device when the pressure in the cooker was such that it created a risk of injury to persons.

88. On March 29, 2024, due to a defect in its design, manufacture and/or warnings, the lid of the Bella® 6-Quart Electric Pressure Cooker opened while the cooker's contents were under pressure.

89. On March 29, 2024, as the lid of the Bella® 6-Quart Electric Pressure Cooker opened, its super-heated contents and steam erupted from the pressure cooker, resulting in severe burns to Plaintiff Renee Campbell's abdomen, arms, and other parts of her body.

14

## FIRST CAUSE OF ACTION

## STRICT LIABILITY

90. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

91. The Bella 6-Quart Electric Pressure Cooker, Model No. M-60B23G, was in a defective and unreasonably dangerous condition when it left Defendant Sensio Inc.'s control.

92. When Plaintiff used her pressure cooker on March 29, 2024, the subject pressure cooker was in the same or substantially similar condition as when it left the possession of the Defendant.

93. Plaintiff did not misuse or materially alter the pressure cooker, including through her use on March 29, 2024.

94. The pressure cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way. Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the pressure cookers safe. The pressure cooker was defective, subjecting Defendant to strict liability, in one or more of the following respects:

   a. The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

15

    c.  Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d.  Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

    e.  Defendant failed to adequately test the pressure cookers; and,

    f.  Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented Plaintiff's injuries and damages.

95.    The product was defectively designed and/or manufactured, creating an unreasonable risk of harm to consumers. Specifically, the product's lid was capable of opening while the cooker was still pressurized, allowing the sudden and dangerous release of scalding contents and steam.

96.    The product failed to meet applicable safety standards, including but not limited to UL 136 Standard for Safety, Pressure Cookers, approved by ANSI as ANSI/UL 136-2010. The product lacked adequate safety mechanisms to prevent the lid from opening under pressure.

97.    Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of their pressure cookers, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public.

98.    Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

16

99. Defendant's actions and omissions were the direct and proximate cause of Plaintiff's injuries and damages.

100. Defendant's outrageous conduct warrants an award of punitive damages.

101. As a direct and proximate result of the defective and unreasonably dangerous condition of the product, Plaintiff Renee Campbell sustained severe burns to her abdomen, causing permanent disfigurement, and resulting in significant pain and suffering.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

102. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

103. Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

104. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to Plaintiff and consumers alike.

105. Defendant was negligent in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, it:

    a. Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

    b. Placed an unsafe product into the stream of commerce;

17

c.   Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and,

d.   Was otherwise careless or negligent.

106.   Defendant breached this duty by negligently designing, manufacturing, and selling the product, including but not limited to:

a.   Failing to design the product with adequate safety mechanisms to prevent the lid from opening while under pressure;

b.   Failing to manufacture the product in compliance with applicable safety standards; and,

c.   Failing to provide adequate warnings or instructions regarding the risks associated with the product.

107.   Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market (and continues to do so) its pressure cookers to the general public.

108.   Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of their pressure cookers, including Plaintiff in this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

109.   Defendant Sensio Inc.'s negligence was a direct and proximate cause of Plaintiff Renee Campbell's injuries, including severe burns to her abdomen, causing permanent disfigurement, and resulting in significant pain and suffering.

18

**THIRD CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

110. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

111. Defendant expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff and her family. Moreover, Defendant expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. Specifically, and among other things, Defendant expressly warranted: For your safety the lid will not come off when it is in the LOCK position.

112. Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

113. Defendant marketed, promoted and sold its pressure cookers as a safe product, complete with "safety measures."

114. Defendant's pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

115. Defendant breached its express warranties in one or more of the following ways:

    a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendant, were defectively designed, and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;

19

b.  Defendant failed to warn and/or place adequate warnings and instructions on their pressure cookers;

c.  Defendant failed to adequately test its pressure cookers; and,

d.  Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

116.  Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

117.  Plaintiff's injuries were the direct and proximate result of Defendant's breach of its express warranties.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

118.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

119.  At the time Defendant marketed, distributed, and sold their pressure cookers to Plaintiff in this case, Defendant warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

120.  Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

121.  Defendant's pressure cookers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

20

122.    The Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

123.    Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injuries and damages.

## DAMAGES

124.    As a direct and proximate result of the actions, conduct, and failure to act, of Defendant Sensio Inc., described above, Plaintiff Renee Campbell suffered serious personal injuries and damages, including medical expenses, physical pain and suffering, mental pain, suffering and anguish, and permanent disfigurement, which total more than $75,000, exclusive of interest and costs.

125.    The facts plead above further prove that Defendant Sensio Inc.'s conduct was outrageously reckless, malicious, wanton, or willfully indifferent to the safety of others, meriting an award of punitive damages.

**WHEREFORE**, Plaintiff Renee Campbell respectfully requests that this Court enter judgment in her favor and against Defendant Sensio Inc., and award the following relief:

   a.  Compensatory damages in an amount to be determined at trial, but in excess of $75,000, exclusive of interest and costs, including but not limited to damages for past medical expenses, pain and suffering, emotional distress, mental anguish, and permanent disfigurement;

   b.  Punitive damages;

21

c.  Costs of suit, including reasonable attorney's fees, as may be allowed by

Pennsylvania law;

d.  Pre-judgment interest as allowed by Pennsylvania law;

e.  Post-judgment interest as allowed by Pennsylvania law;

f.  All taxable court costs; and,

g.  Such other damages and further relief as supported by the evidence and the

Court deems just and proper.

## JURY DEMAND

Plaintiff Renee Campbell demands a trial by jury on all issues so triable.

Respectfully submitted on this 26th day of March 2026.


**KLINE & SPECTER, P.C.**

By:   */s/ Benjamin O. Present*
THOMAS R. KLINE, ESQUIRE
BENJAMIN O. PRESENT, ESQUIRE
Identification Nos. 28895/322682
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Phone: (215) 772-1000


*In affiliation with*


**MCLAUGHLIN LAW FIRM, P.C**.

*/s/George E. McLaughlin*
GEORGE E. McLAUGHLIN, ESQUIRE
1890 Gaylord St.
Denver, Colorado 80206
*[PRO HAC VICE MOTION
FORTHCOMING]*

*Attorneys for Plaintiff*